UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00169-TBR

SUN HEALTHCARE GROUP, INC.;                                     Plaintiffs
HBR PADUCAH, LLC,
d/b/a Paducah Care and Rehabilitation Center;
HBR KENTUCKY, LLC;
HARBORSIDE HEALTHCARE, LLC;
SUNBRIDGE HEALTHCARE, LLC;
GENESIS HEALTHCARE, LLC;

v.

PATTI JO DOWDY                                                  Defendant


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Patti Jo Dowdy's Motion to
Dismiss.  (Docket No. 6.)  Plaintiffs have responded.  (Docket No. 7.)  This matter is
now ripe for adjudication.  For the following reasons and consistent with the below
opinion, the Court will **DENY** Defendant Patti Jo Dowdy's Motion to Dismiss.  (Docket
No. 6.)


BACKGROUND

On or around June 1, 2012, Defendant Patti Dowdy admitted herself to Paducah
Care and Rehabilitation Center, a nursing home.  (Docket No. 1, ¶ 16.)    As part of the
admission process, Defendant signed a Long Term Care Arbitration Agreement, (Docket
No. 1-2), which provides, in summary, that any claims arising out of or in any way

relating to the Agreement, the Admission Agreement, or the resident's stay at the facility "shall be submitted to binding arbitration."  (Docket No. 1, ¶ 17, 19.)

In a related state court action in McCracken Circuit Court filed on August 1, 2013, (Case No. 13-CI-00714), Defendant Dowdy alleges that while residing at Paducah Care and Rehabilitation Center she "suffered physical and emotional injuries due to inadequate care, and her health and physical condition deteriorated beyond that caused by the normal aging process."  (Docket No. 6-1, at 1.)  Specifically, in that state court action, Defendant claims negligence, medical negligence, corporate negligence, and violation of a long term care resident's rights against Plaintiffs Sun Healthcare Group [1] and two administrators—Cathy Ortega and Sonja Henderson-Maddox—of Paducah Care & Rehabilitation Center.  *Id.*  These administrators are not parties to the action before this Court and are citizens of Kentucky for purposes of diversity jurisdiction, unlike Plaintiffs Sun Healthcare Group.  Plaintiffs Sun Healthcare Group are corporations with their principal place of business outside of Kentucky.

Plaintiffs Sun Healthcare Group filed the Complaint in this case on September 9, 2013.  (Docket No. 1.)  Plaintiffs' Complaint seeks to (i) compel arbitration of the claims asserted by Defendant in the McCracken Circuit Court, (Case No. 13-CI-00714), pursuant to 9 U.S.C. § 4; (ii) enjoin Defendant from further pursuing the state court

---

[1] Plaintiffs include Sun Healthcare Group, Inc.; HBR Paducah, LLC; HBR Kentucky, LLC; Harborside Healthcare, LLC; Sunbridge Healthcare, LLC; and Genesis Healthcare, LLC.  The Court will refer to these Plaintiffs collectively as "Sun Healthcare Group."

action; and (iii) related relief.[2]   Defendant moves the Court to dismiss Plaintiffs'

Complaint based on several different arguments.  (Docket No. 6.)

## STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion

to dismiss for lack of subject-matter jurisdiction.   "Subject matter jurisdiction is always

a threshold determination," *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537

(6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)),

and "may be raised at any stage in the proceedings," *Shultz v. Gen. R.V. Ctr.*, 512 F.3d

754, 756 (6th Cir. 2008).   Where subject matter jurisdiction is challenged pursuant to

Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction in order to survive

the motion.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.

1990) (citing *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986)); *see*

*also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).   "If the court determines

at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir.

2004).   A federal district court has original diversity jurisdiction over an action between

citizens of different states and where the amount in controversy exceeds $75,000,

exclusive of interest and costs.  28 U.S.C. § 1332(a).

The Federal Rules of Civil Procedure require that pleadings, including

complaints, contain a "short plain statement of the claim showing that the pleader is

---

[2] Plaintiffs made the same allegation that the state court claims are subject to a binding alternative dispute resolution agreement in their Answer filed on September 3, 2013, to Defendant's Complaint in McCracken Circuit Court.

entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id.* at 1950

(citing Fed. R. Civ. P. 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*

DISCUSSION

Because Defendant has claimed there are several different bases are under which the Court should dismiss Plaintiffs' Complaint, the Court will address each in turn.

I.  Subject-Matter Jurisdiction — Diversity

Defendant argues that Plaintiffs' Complaint should be dismissed due to a lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Docket No. 6, at 2.)  Specifically, Defendant alleges that two of the properly-named defendant parties in the McCracken Circuit Court action are citizens of Kentucky, thereby violating the complete diversity requirement—even though those parties are not actually before the Court.

Defendant argues that *Vaden v. Discover Bank*, 556 U.S. 49 (2009), stands for the proposition "that, in cases involving arbitration questions, it is to the underlying controversy to which this Court must look regarding questions of subject-matter jurisdiction."  The Federal Arbitration Act (FAA), 9 U.S.C. § 4, states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, **would have jurisdiction** under Title 28, in a civil action or in admiralty **of the subject matter of a suit arising out of the controversy** between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C.A. § 4 (emphasis added). Defendant emphasizes the bolded language, arguing the FAA requires that an independent basis in the underlying controversy to be arbitrated is necessary for subject-matter jurisdiction to exist. Both parties agree that federal-question is not a basis for jurisdiction here and that the dispute centers around whether or not complete diversity exists.

Defendant argues that no diversity jurisdiction exists because the parties to the underlying controversy in the McCracken Circuit Court are not diverse, while Plaintiffs argue that because the named parties in this present action are diverse, diversity jurisdiction does exist. As for Defendant's reliance on *Vaden*, Plaintiffs argue its analysis applies only to federal-question jurisdiction, not diversity of citizenship jurisdiction.

In *Vaden* a credit card company, Discover, asserted a state law claim to recover past-due charges from one of its credit cardholders. *Vaden*, 556 U.S. at 53. The holder counterclaimed, alleging Discover's finance charges, interest, and late fees violated state law. *Id.* Invoking an arbitration clause in its cardholder agreement, Discover filed a 9 U.S.C. § 4 petition in federal district court to compel arbitration of the holder's counterclaims, arguing they were preempted by federal law. *Id.*

The Supreme Court framed the question presented as:

> Should a district court, if asked to compel arbitration pursuant to § 4, 'look through' the petition and grant the requested relief if the court would have federal-question jurisdiction over the underlying controversy? And if the answer to that question is yes, may a district court exercise jurisdiction over a § 4 petition when the

> petitioner's complaint rests on state law but an actual or potential
> counterclaim rests on federal law?

*Vaden*, 556 U.S. at 53. The Supreme Court ultimately held that a federal court may "look through" a § 4 petition and order arbitration if the court would have jurisdiction over the underlying controversy between the parties. *Id.* However, the Court found that the district court incorrectly compelled arbitration because the claims in the Complaint were based on state law and federal-question jurisdiction cannot be invoked on the basis of a defense or counterclaim under the well-pleaded complaint rule. *Id.* at 1254.

Plaintiffs correctly point out that *Vaden* concerned only federal-question jurisdiction and did not involve diversity jurisdiction. Plaintiffs assert that the "look through" analysis in *Vaden* is not applicable when diversity jurisdiction exists as an independent jurisdictional basis because "there is no support in the text of the *Vaden* decision (or in any other case) for such broad reaching conclusions." (Docket No. 7, at 4.) Plaintiffs rely on an Eighth Circuit case, *Northport Health Services of Arkansas v. Rutherford*, 605 F.3d 483 (8th Cir. 2010), involving circumstances similar to this case where the "look through" analysis was rejected in the context of the determination of diversity jurisdiction.

In *Northport*, state law claims were brought by the estates of deceased nursing home patient against a number of defendants, including administrator defendants who were not diverse. *Id.* at 485. Prior to being admitted to the nursing homes, the administrators had signed arbitration agreements. *Id.* The defendants, with the exception of the non-diverse administrators, petitioned the federal court for enforcement of the arbitration agreement based on diversity jurisdiction. *Id.*

The representatives opposed compelling arbitration, claiming that a federal court did not have diversity jurisdiction over a § 4 petition to compel arbitration of claims that were part of a pending state court action that includes one or more non-diverse parties not named in the § 4 petition. *Northport*, 605 F.3d at 485. The district court compelled arbitration concluding that, while *Vaden* addressed only federal-question jurisdiction, its "look through" analysis implicitly overruled prior federal cases compelling arbitration based upon diversity of citizenship. *Id.* at 485-86. The Eighth Circuit ultimately reversed the district court, concluding that while "some of the reasoning in *Vaden* supports the district court's rulings, we are not persuaded that *Vaden* implicitly overruled the otherwise on-point decisions in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), and *Advance America Servicing of Arkansas v. McGinnis*, 526 F.3d 1170 (8th Cir. 2008)." *Northport*, 605 F.3d at 486.

While not binding, the Court is persuaded by the well-reasoned analysis in *Northpoint*. As the Eighth Circuit recognized, Defendant's argument for applying the "look through" analysis in this case distorts the Supreme Court's decision in *Vaden*. *Northport*, 605 F.3d at 488-89. It ignores that *Vaden* involved a federal-question, explicitly stated it was only applicable to federal-question cases, and that the circuit conflict it sought to resolve involved only federal-question cases. *See Northport*, 605 F.3d at 488-89. *Vaden* did not mandate a new analysis for § 4 diversity jurisdiction disputes. Furthermore, *Moses H. Cone* is persuasive because the Supreme Court found the independent basis of federal jurisdiction was diversity of citizenship, but the Court—despite noting the existence of a non-diverse party in the underlying state court action—did not address a would be defect in diversity jurisdiction based on Defendant's

interpretation of *Vaden*. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 4-8 (1983). Therefore, as was recognized in *Northport*, Defendant's contention would require this Court to assume the Supreme Court "overlooked a serious diversity jurisdiction issue in *Moses H Cone* and then implicitly overruled Cone's jurisdictional underpinnings in *Vaden*." *Northport*, 605 F.3d at 490. "The Supreme Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Northport*, 605 F.3d at 490 (citations omitted). Therefore, in this case, for purposes of determining if diversity of citizenship exists, we look only to the citizenship of the parties to the federal action.

i.     Conclusion — Subject-Matter Jurisdiction Exists

The FAA bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute. Here, that independent basis exists because the parties before this Court are completely diverse.[3] As discussed above, the makeup of the parties in the underlying controversy is irrelevant for the determination of whether or not diversity jurisdiction exists. The determinative inquiry is the makeup of the parties before this Court. The parties presently before the Court, which does not include the administrators, are diverse. Therefore, this Court has subject-matter jurisdiction on the basis of diversity.

---

[3] 28 U.S.C. 1332 "confers federal jurisdiction only if complete diversity of citizenship exists, such that no party has the same citizenship of any opposing party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (2001) (citations omitted).

II.     Indispensable Party Analysis

Defendant also moves to dismiss the Complaint for failure to join an "indispensable" party, pursuant to Federal Rule of Civil Procedure 12(b)(7) and 19.[4] (See Docket No. 6-1, at 17.)  Federal Rule of Civil Procedure 19(a) states:

> **(a) Persons Required to Be Joined if Feasible**
> **(1) Required Party.**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Essentially, under Rule 19(a), a "necessary" party is one having an interest in the controversy, and whose absence would result in some aspect of the suit being left outstanding.  *See, e.g., Shields v. Barrow*, 58 U.S. 130, 139 (1854).  A "necessary" party must be joined if feasible—if they are "subject to service of process" and would "not deprive the court of subject-matter jurisdiction."  FED. R. CIV. P. 19(a).  The parties are in agreement that the administrators are "necessary" parties under Rule 19(a).  Without their presence in an arbitration or action in this Court, actions against them would be left outstanding from the underlying controversy.

---

[4] Federal Rule of Civil Procedure 12(b)(7) provides that a party may move for dismissal based on the "failure to join a party under Rule 19."

However, the administrators cannot be joined because they would deprive the Court of subject-matter jurisdiction because they are not diverse. In certain circumstances, a "necessary" party is "indispensable" and the action should be dismissed in the absence of the indispensable party. *See, e.g., PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200-01 (6th Cir. 2001). Federal Rule of Civil Procedure 19(b) states:

> **(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2)  the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Indispensable parties are those "who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *See, e.g., Shields v. Barrow*, 58 U.S. 130, 139 (1854). The parties dispute whether the administrators are "indispensable" parties under Rule 19(b)—which would require dismissal because joinder of the administrators as parties would deprive the Court of jurisdiction.

Defendant concedes that a party's status as a joint tortfeasor does not make a party indispensable *per se*, (Docket No. 6-1, at 18), but argues the administrators are indispensable parties based on *Jenkins v. Reneau*, 697 F.2ds 160 (6th Cir. 1983). In *Jenkins*, a plaintiff brought a legal malpractice action against a law firm for the mishandling of a wrongful death and nursing home abuse action in a federal court in Tennessee on diversity jurisdiction grounds. *Id.* at 161. The plaintiff was an Alabama resident and the defendant firm a Tennessee entity. *Id.* However, the law firm had been retained by the plaintiff to pursue an action on behalf of the plaintiff and all other heirs at law of the decedent nursing home resident. *Id.* The plaintiff's sister, an heir at law of the decedent, was a Tennessee resident. *Id.* The Sixth Circuit affirmed the district court's dismissal and found that since the sister was a real party in interest in the single controversy regarding malpractice, she was an indispensable party in that action. *See also Jamison v. Memphis Transit Management Co.*, 381 F.2d 670 (6th Cir. 1967) (finding mother was an indispensable party in statutory wrongful death action because she and the father had a joint right of action against the defendant).

On the other hand, Defendant argues that these administrators are not "indispensable" parties, relying on *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200-206 (6th Cir. 2001). In *PaineWebber*, an executor of an individual's estate brought an action against an investment brokerage firm, PaineWebber, and the branch manager in state court. *Id.* at 199-200. Based on an arbitration clause in the "Client's Agreement," the investment brokerage firm—and not the branch manager—brought a diversity action in federal court to compel arbitration of a dispute with a client's executor and to stay the executor's state court action against the firm and an individual branch manager.

*Id.* The executor filed a motion to dismiss the federal case on the basis that the branch manager was an indispensable party. *Id.*

In reversing the district court's determination that the branch manager was an indispensable party, the Sixth Circuit analyzed the four Rule 19(b) factors the Courts are instructed to consider. *Id.* at 202. Those factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

i. First Rule 19(b) Factor – Extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties

With respect to the first factor concerning the potential prejudice the parties may face if a judgment was rendered in the absence of the necessary party, the Sixth Circuit noted the possibility of inconsistent legal obligations that might result from conflicting interpretations of the arbitration clause by state and federal courts. *PaineWebber*, 276 F.3d at 202. However, the Sixth Circuit found the potential prejudice to either the plaintiff in the state court action or the branch manager was minimal, noting it was "crucial" that the executor was a state court plaintiff who sued both PaineWebber and the branch manager, rather than demanding arbitration. *Id.* In so doing, the

*PaineWebber* Court cited approvingly to *Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 453 (7th Cir. 1977).

In *Bio-Analytical Services*, the plaintiff entity sought an order from federal court to compel arbitration of claims that the defendant brought against it and a non-diverse doctor in state court. *Id.* In determining that the absence of the doctor would not be prejudicial to either the parties or the doctor, the Seventh Circuit explained that the state court plaintiff's concern with repetitious lawsuits was solely the result of its own state court lawsuit. *Id.* The Sixth Circuit analogized to the situation in *PaineWebber*, and similarly found that any potential prejudice was caused by the executor's own state court lawsuit. Furthermore, the Court noted that the executor faced no possible liability to the branch manager, although the branch manager may be liable to the executor. The Sixth Circuit also stated that the fear that federal and state courts will reach conflicting interpretations of an arbitration clause did not present the degree of prejudice necessary to support a conclusion that the branch manager was an indispensable party:

> This possibility exists because Cohen [the state court plaintiff] chose to name both PaineWebber [the investment brokerage firm] and Wilheim [the branch manager] as defendants in the state court action. Although such a decision ordinarily would preclude federal adjudication of a case . . . the FAA allows any party to an arbitration agreement to file a petition to compel arbitration.

*PaineWebber*, 276 F.3d at 203. The possibility of inconsistent results in state and federal court can always occur whenever joint tortfeasors are not parties to the same lawsuit, and, joint tortfeasors are not by their status as a joint tortfeasor alone a necessary party, much less an indispensable party. *PaineWebber*, 276 F.3d at 204.

Similarly, in this case, any potential concern with repetitious lawsuits is solely the result of Defendant Patti Dowdy's state court lawsuit—where she is the sole plaintiff. Additionally, as the Sixth Circuit recognizes, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *PaineWebber*, 276 F.3d at 203; *see also GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421, at *3 (W.D. Ky. December 19, 2013). Accordingly, the first factor does not weigh in favor of dismissing the action.

      ii.    Second Rule 19(b) Factor – Extent to which any prejudice could be lessened or avoided

As for the second factor, the Sixth Circuit has noted that it becomes less important when there is only a small degree of potential prejudice if the action proceeds. *PaineWebber*, 276 F.3d at 205. Here too, as discussed above, there is minimal potential prejudice—if any at all. Therefore, this second factor is neutral and does not weigh in favor of or against dismissing the action.

      iii.   Third Rule 19(b) Factor – Whether judgment rendered in person's absence would be adequate

As for the third factor, the Sixth Circuit found a judgment rendered in the branch manager's absence "would be adequate." The Court again noted that "the possibility of Cohen [the state court plaintiff] having to arbitrate his claims against PaineWebber while proceeding with his claims against Wilhelm [the branch manager] does not render a judgment between Cohen and PaineWebber inadequate." *PaineWebber*, 276 F.3d at 205. The same rationale applies here and, therefore, the third factor does not weigh in favor of dismissing the action based the administrators being indispensable parties.

     iv.    Fourth Rule 19(b) Factor – Whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder

As for the final factor, the Sixth Circuit determined that, unlike the first three factors, it favored dismissal because the state court presents an alternative forum/adequate remedy where the state court plaintiff executor could bring claims against the state court defendants. *PaineWebber*, 276 F.3d at 205. However, the Sixth Circuit noted "the potential existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice." *Id.* (citations omitted). Furthermore, the Sixth Circuit opined that a "major policy consideration" weighed against a finding of an indispensable party: such a finding would virtually eliminate the availability of federal courts to enforce arbitration clauses in diversity cases by the expedient action by one of the parties of filing a preemptive suit in state court with at least one non-diverse defendant. *Id.* Allowing such actions to prevent federal courts from enforcing arbitration clauses would fatally undermine the FAA. *See id.* at 205-06. Accordingly, the Court declined to find the branch manager was an indispensable party.

As demonstrated, the Sixth Circuit's analysis in *PaineWebber* is determinative as to the question of whether or not the administrators are "indispensable" parties. Based on an application of the four factors in Rule 19(b), they are not indispensable parties and therefore dismissal is not required. To the extent, Defendant Dowdy relies on *Jackson*, the Court notes that there was very little analysis of the four factors in that case and it is factually distinguishable. In any event, *PaineWebber* has greater similarities from a factual standpoint to this case, and *PaineWebber* is the more recent

case. [5]   Furthermore, this Court has recently found an administrator was not an indispensable party in very similar circumstances. *GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421 (W.D. Ky. Dec. 19, 2013). [6]   Accordingly, the Court finds that the administrators in the state court action are not "indispensable" parties to this present case.

III.   Abstention Analysis

Defendant also argues that the Plaintiffs' Complaint should be dismissed because this Court should abstain from exercising jurisdiction, relying on *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).  Defendant points out that there is a parallel proceeding in state court with substantially the same parties and issues.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River,* 424 U.S. at 813.   Abstention is an "extraordinary and narrow exception" to the "virtually unflagging obligation" of federal courts to exercise jurisdiction given them. *Id.* at 813, 817.   As has been recognized by the Sixth Circuit, the Supreme Court has identified eight factors, four in *Colorado River* and four in subsequent decisions, that a district court must consider when deciding whether to

---

[5] The Court notes that:

> In the arbitration context, to our knowledge every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration.

*Northport Health Services of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (7th Cir. 2010) (citations omitted).

[6] To the extent Plaintiff relies on the *Cytec*, the Court notes that *Cytec* is a non-binding case from the Northern District of West Virginia and the Court is bound to follow Sixth Circuit precedent.

abstain from exercising its jurisdiction due to concurrent jurisdiction of a state court.

*PaineWebber*, 276 F.3d at 206. These factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber*, 276 F.3d at 206. The consideration of these factors "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 207.

1) First Factor – Whether the state court has assumed jurisdiction over any res or property

The first factor weighs in favor of the Court exercising jurisdiction and denying Defendant's Motion to Dismiss because the state court has not assumed jurisdiction over any res or property.

2) Second Factor – Whether the federal forum is less convenient to the parties

The second factor "relates to geographical considerations, not to the relative jurisdiction scope of state versus federal courts." *PaineWebber*, 276 F.3d at 207. Both the state court and this Court are situated in Paducah, Kentucky. As such, federal court is not less convenient for Defendant or Plaintiffs. Accordingly, this factor weighs in favor of the Court exercising jurisdiction.

3) Third Factor – Avoidance of piecemeal litigation

The third factor would, at first glance, appear to counsel against taking jurisdiction because it would result in parallel proceedings and the possibility of inconsistent outcomes. However, for the same reasons that the threat of piecemeal litigation does not make the administrators indispensable parties, "the desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration." *PaineWebber*, 276 F.3d at 207. In these circumstances, where a Complaint to compel arbitration has been filed, FAA policy favoring piecemeal litigation prevails. Therefore, this factor weighs in favor of the Court exercising jurisdiction based on the congressional intent expressed in the FAA.

4) Fourth Factor – Order in which jurisdiction was obtained

As for the fourth factor, Defendant filed her state court action before the present action was filed by Plaintiffs in this Court. However, Plaintiffs filed the present action shortly after filing their Answer to Defendant's Complaint in the state court action and the state court matter has not proceeded beyond the initial pleadings. "Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 22; *see also PaineWebber*, 276 F.3d at 207. Therefore, this factor is either neutral or slightly in favor of abstention.

5) Fifth Factor – Whether the source of governing law is state or federal

As for the fifth factor, the Sixth Circuit noted in *PaineWebber* that where the FAA provides the source of the law for interpreting the disputed arbitration agreement, this factor weighs in favor of the Court exercising jurisdiction. *PaineWebber*, 276 F.3d

at 208. The Sixth Circuit noted that this factor is less significant where there is concurrent jurisdiction, but also noted the task under the *Colorado River* analysis was not to search for "some substantial reason" for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exists "exceptional circumstances" to justify the *surrender* of that jurisdiction. *Id.* at 208 (citations omitted). Therefore, the fifth factor weighs in favor of this Court exercising jurisdiction.

6) Sixth Factor – Adequacy of the State Forum

As for the sixth factor, adequacy of the state forum, the state court action is adequate to protect Plaintiffs' rights. Plaintiffs' rights under the FAA would be protected in the state court proceeding and FAA motions may be considered concurrently on their merits in the state court. In fact, in their Answer in the state court case, Plaintiffs make the same claim that the arbitration clause requires that these claims be arbitrated. Accordingly, the sixth factor weighs in favor of this Court abstaining.

7) Seventh Factor – Relative progress of the proceedings

The seventh factor supports exercising jurisdiction because, as in *PaineWebber*, the state court action has not progressed to any significant degree. Plaintiffs' Complaint in this Court was filed shortly after their Answer was filed in the state court action. It appears there has been no further substantive progression in the state court action and the last filing was a notice of the pending Complaint in this federal court case. Accordingly, this factor weighs in favor of this Court exercising jurisdiction.

8) Eighth Factor – Presence or absence of concurrent jurisdiction

As for the eighth factor, the source of governing law is the FAA but state courts possess concurrent jurisdiction over these claims. As recognized in *PaineWebber*, the presence of concurrent jurisdiction "only marginally, if at all, favors abstention." *PaineWebber*, 276 F.3d at 208. In fact, "the preceding discussion of the fifth factor demonstrates that the eighth factor is insufficient to justify abstention despite concurrent jurisdiction in state and federal court where a congressional act provides the governing law and expresses a preference for federal litigation." *Id.* Accordingly, this factor is either neutral or marginally in favor—but not determinatively so—of abstention.

As in *PaineWebber*, this Court finds the vast majority of factors are either neutral or supportive of federal jurisdiction. The fact that the state court can protect Plaintiffs' rights under the FAA does not provide the "exceptional" circumstances necessary to justify abandoning the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 818. Accordingly, abstention is not warranted in this case.

IV.   Allegation that Arbitration Agreement is Invalid and Unenforceable

Defendant also moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, alleging the underlying Arbitration Agreement is invalid and unenforceable. Specifically, Defendant claims that (i) the agreement does not evidence a transaction involving interstate commerce; (ii) it is impossible to perform according to its terms;

and (iii) the agreement is facially unenforceable because it is unconscionable and void as against public policy.  (Docket No. 6-1, at 26.)

i.   Interstate Commerce

The Supreme Court has interpreted the language "involving commerce" in the FAA as signaling the broadest permissible exercise of Congress' Commerce Clause power.  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *see also GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421, at *3 (W.D. Ky. December 19, 2013).   Defendant argues the contract does not evidence a transaction involving interstate commerce—meaning the FAA is not applicable.

Defendant cites only one case in support of their position that that the transaction does not involve interstate commerce: *Saneii v. Robards*, 289 F. Supp. 2d 855, 858 (W.D. Ky. 2003).  In *Saneii*, the Court held that the single sale of residential real estate was intrastate, emphasizing the commodity of land "is firmly planted in one particular state" and that the citizenship of the immediate parties was incidental to the real estate transaction.  *Id.* at 858-59.  Defendant argues the agreement at issue here, which concerns a Kentucky citizen with a personal care facility located within Kentucky, would similarly be "inherently intrastate."

On the other hand, Plaintiffs argue that Defendant's own state court Complaint essentially concedes this transaction involves interstate, as opposed to intrastate, commerce by alleging that foreign entities own, operate, manage, control, and/or provide services for Paducah Care and Rehabilitation Center.  Plaintiffs also point out

that Defendant specifically invoked Kentucky's long-arm statute to bring some of the Plaintiffs before the McCracken Circuit Court.

Many cases have found the FAA applies to arbitration agreements in the context of nursing home residents.  (*See* Docket No. 7, at 17.)  Furthermore, this Court recently found an admissions agreement to a nursing home evidenced a nexus with interstate commerce at a high level of abstraction because it involves a provision of health care. *GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421, at *7-8 (W.D. Ky. December 19, 2013).  In *GGNSC*, this Court emphasized that, while the nursing care may occur wholly within the borders of Kentucky, the food, medicine, medical, and other supplies all likely come from elsewhere and that it would be impracticable for the nursing home to procure all goods necessary for the daily operations purely through intrastate channels.  *Id.* at *8.  This Court also noted that the complaint alleged that foreign entities owned, operated, manager, controlled, and provided services for the nursing home.  *Id.*  In a footnote, this Court explicitly distinguished *Saneii*, stating in that case the only factor incidentally linking the transaction to interstate commerce was that one party to the residential real estate sale was an out-of-state commercial entity. *Id.* at *8 n.11.  Therefore, the admissions agreement, containing the arbitration clause, reflects a transaction involving interstate commerce.   Accordingly, Defendant's argument that the FAA does not apply is inapplicable.

ii. Allegation that the Arbitration Agreement is Impossible to Perform

Defendant also alleges the arbitration agreement is impossible to enforce according to its terms and, therefore, Plaintiffs are not entitled to compel its enforcement. The provision at issue is Section C, Paragraph Six:

> **6. Procedural Rules and Substantive Law.** The Arbitrator shall apply NAF's Code of Procedure (in effect as of May 1, 2006) unless otherwise stated in this Agreement. The parties' selection of the NAF Code of Procedure to govern the arbitration proceedings is not tantamount to the selection of NAF as the administrator of the arbitration . . .

(Docket No. 1-2, at 2.) Defendant argues that, while facially the agreement makes the National Arbitration Forum's (NAF) participation optional, it makes the NAF Code of Procedure mandatory. Defendant alleges that this code is inoperable without NAF participation and NAF no longer administers consumer related pre-dispute arbitration agreement.

Rule One of the NAF Code of Procedure states: "This Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum." Defendant also cites several other provisions in the NAF Code of Procedure that indicate NAF is imposed with the duty to administer arbitration that take place under the Code. (*See* Docket No. 6-1, at 29-31.) In particular, Defendant emphasizes NAF Code Rule 48(D) and (E), which provides that if the parties are denied the opportunity to arbitrate a dispute before NAF they may "seek legal and other remedies in accord with applicable law." (*See* Docket No. 6-1, at 30.)

The arbitration agreement itself only references the NAF Code of Procedure once, in Paragraph Six of Section C. There is no indication that the usage of the NAF Code is integral to arbitration of this matter. The agreement specifically states that the selection of the NAF Code of Procedure to govern the arbitration proceedings "is not tantamount to the selection of NAF as the administrator of the arbitration." The agreement also provides the process for choosing an administrator, and at no point does it require a NAF administrator. Furthermore, the FAA contains a provision allowing the Court to select an arbitrator and the Sixth Circuit has found that an arbitrator-selection provision was severable from the remainder of an arbitration agreement. *See McMullen v. Meijer, Inc.*, 166 Fed. App'x. 154 (6th Cir. 2006). Therefore, because of the federal policy in favor of arbitration evinced in the FAA, the parties' intent to utilize arbitration as the exclusive method of resolving disputes, and the finding that the use of the NAF Code of Procedure was not integral to the agreement, the Court finds Defendant's argument of impossibility is not a basis for dismissing Plaintiffs' Complaint.

iii. Allegation of Unconscionability

Defendant also argues the agreement is unenforceable because it is unconscionable, both procedurally and substantive. The doctrine of unconscionability is a narrow exception to the fundamental rule of contract law that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. *See, e.g., Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (finding arbitration clause was not unconscionable). Defendant claims this arbitration agreement was

"likely presented to the Defendant within a lengthy stack of admissions paperwork" and that there was an "gross disparity of bargaining power between the parties[.]" (Docket No. 6-1, at 33.) Defendant also cites a Wall Street Journal article which alleges unequal bargaining positions and criticizes the inclusion of arbitration clauses in the context of nursing home cases.

The Court notes that the arbitration agreement at issue here is: (1) a stand-alone agreement; (2) six pages printed in normal font; (3) the last page contains a bold face all capital letter provision noting waiver of right to a jury trial; (4) no limitation on type or amount of damages claimed; (5) no limitation on causes of action; and (6) the agreement is titled in bold face all capital letters stating it governs important legal rights and should be read carefully. (*See* Docket No. 1-2.) Therefore, from a procedural standpoint, Defendant's argument of unconscionability has no merit.

From a substantive standpoint, Defendant's arguments essentially amount to an allegation that arbitration will not afford her an adequate opportunity to present her claims. Under the FAA, such a presumption is not a proper basis for refusing enforcement of an arbitration clause under the doctrine of unconscionability.

iv. Allegation of Violation of Public Policy

Defendant also claims the arbitration agreement is void as against public policy. It appears Defendant's argument is based on the existence of statutes instructing nursing home facilities to encourage and assist residents in exercising their rights and the notion that arbitration interferes with their right to bring an action in court. (Docket No. 6-1, at 36-37.) The Supreme Court has unequivocally stated that pre-dispute arbitration

agreements in the nursing home context are not exempted under the FAA. *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201, 1203-04 (2012).  Accordingly, there is no public policy that could support Defendant's position here.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendant Patti Dowdy's Motion to Dismiss, (Docket No. 6.), is **DENIED**, consistent with the above opinion.


IT IS SO ORDERED.

Date:

cc:      Counsel